**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| NICOLE C. DANTES | CIVIL ACTION NO. 15-0528 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SOUTHWESTERN ELECTRIC POWER COMPANY, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendants Southwestern Electric Power Company ("SWEPCO") and American Electric Power Service Corporation's ("AEP") (collectively the "Defendants") unopposed "Motion for Summary Judgment" (Record Document 49) seeking to dismiss all of Plaintiff Nicole C. Dantes' ("Dantes") claims of discrimination under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. For the reasons contained herein, Defendants' unopposed "Motion for Summary Judgment" is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Dantes began her employment search with Defendants on February 13, 2007, seeking employment as a Customer Service Associate. See Record Document 49-5 at 68. Based upon her application, and following the completion of the employment application process, including an interview, she was employed on March 19, 2007 by the

---

[1] Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2. In the present matter, Dantes has not filed an opposition to Defendants' Motion for Summary Judgment. On April 3, 2018, this Court issued a "Notice of Motion Setting" (Record Document 51) giving Dantes fourteen (14) calendar days to file an opposition. To date, no opposition has been filed. Therefore, the material facts which follow, as submitted by Defendants, have not been controverted and are hereby deemed admitted. See Record Document 49–2.

Defendants as a Customer Solutions Associate in Shreveport, Louisiana. See id. at 4. In her role with the Defendants, Plaintiff was responsible for processing customer requests, answering customer inquiries and resolving complaints within the Customer Solutions Center ("CSC"). See id. at 3. Customer Solutions Associates work at a desk in a call center environment which can be a high stress environment due to customers using the CSC to voice concerns, complaints and issues that are affecting not only electric service, but also emergencies, such as outages, downed power lines, and other hazards. See id. On November 1, 2007, Dantes left work early due to an alleged health-related issue. See id. at 4. From the following day until her termination, Dantes failed to report to work due to alleged health-related reasons, although she did not provide Defendants with necessary and requested information to substantiate her alleged health issue. See Record Document 49-3 at 3. Specifically, the AEP Recovery Center, which is responsible for administrating the Company's Sick Pay Plan, and Dantes' supervisors made numerous calls to her in November 2007 requesting more information to substantiate her absences in order to continue her sick pay. See id.

AEP's Sick Pay Policy specifically requires "written documentation from a health care provider certifying the reason for the absence, expected date of return, and written proof of continuing inability to work." Id. The Policy further requires that "you must notify your supervisor each day of your absence, unless other arrangements have been made." Record Document 49-5 at 36. The Sick Pay Policy clearly provides that benefits under the Policy terminate when "you fail to submit, when requested, sufficient written objective medical information relating to your illness or injury which supports a functional impairment preventing you from performing your occupation or a reasonable employment

option." Id. at 40. Further, the AEP Recovery Center, sent correspondence to Dantes enclosing a blank Certificate of Disability / Attending Physician Statement advising that the form "must be completed and returned to the Recovery Center no later than [November 28, 2007]." Id. at 46.

On November 14, 2007, two weeks after Dantes left early during her shift due to medical issues, Defendants began receiving doctors' slips providing that Dantes was "under the care of" a doctor or to "please excuse her from work." See id. at 5. Specifically, the excuses Dantes provided to Defendants on November 14, 2007 are as follows:

- Return to Work or School Excuse dated November 5, 2007 by Dr. Cassiere stating that Nicole Dantes has been under his care on November 6, 2007 and is able to return to work on November 7, 2007.

- Excuse from Work / School dated November 8, 2007 by Willis Knighton Imaging Center stating "please excuse Nicole Dantes from work. This patient had a procedure/x-ray done at Willis Knighton Health Systems at the Portico location, in the Imaging Department."

- A notation from Overton Brooks VA Medical Center dated 11/11/07 with a handwritten note which states "*may return to work on 11/14/07," and another handwritten note – which appears to be that of Ms. Dantes – states "VA emergency room seen on 11/11/07," but with no notation of what plaintiff was seen for at Overton Brooks on 11/11/07.

- A note from Ark-La-Tex Cardiology dated November 13, 2007 and signed by Dr. Laura K. Murphy stating "please excuse Nicole Dantes from work/school this date as he/she had an appointment in our office."

- A note from John M. Gilmer, Jr., DDS, dated November 14, 2007, stating "This is to certify that Nicole Dantes had an appointment at this office for endodontic therapy on: November 14, 2007 at 9:15 o'clock. Please excuse from Work until 11/16/07.

- A second note from John M. Gilmer, Jr., DDS dated November 14, 2007, stating "This is to certify that Nicole Dantes has an appointment at this office for endodontic therapy on: November 28,

> 2007 at 8:00 o'clock. Please excuse from Work until 11/28/07." An additional handwritten note – which appears to be that of Ms. Dantes – indicates that this is an "Extended Absence Excuse 11/14/07 – 11/28/07."

Id. at 5-6. These work excuses do not comply with Defendants' Sick Pay requirements as they do not provide sufficient written objective medical information relating to Dantes' illness supporting a functional impairment preventing her from performing her job. See id. at 5.

On November 14, 2007, Defendants also received a Certificate of Disability / Attending Physician Statement from Dr. Cassiere providing that Dantes had been treated for a "UTI" from November 2, 2007 through November 9, 2007, with a release to full duty on November 12, 2007. See id. at 5. On November 20, 2007, Defendants received another Certificate of Disability / Attending Physician Statement from Dr. Cassiere providing that Ms. Dantes had been treated for a "UTI / Dyspnea with speaking" from November 2, 2007 through November 9, 2007, with a release to full duty on November 12, 2007, which are the same dates previously set forth in Dr. Cassiere's November 12, 2007 Certificate. See id. at 6. Later, on November 27, 2007, AEP received a Certificate of Disability / Attending Physician Statement from Dr. Gilmer which provided that Dantes was being treated for a Root Canal on November 14, 2007. See id.[2]

As a result of Dantes' continued absences and her failure to provide the necessary documentation, Ms. Pamela Dukes issued a termination letter to Dantes on November 27, 2007. See id. at 7. The next day, Ms. Vivian Andrews spoke with Dantes and

---

[2] This Certificate of Disability / Attending Physician Statement provided that Dantes was being treated for a root canal from November 14, 2007 to December 13, 2007, with a release to full duty date of December 14, 2007. See Record Document 49-5 at 62. However, this was not covered under Defendants' sick-pay policy because (1) there was insufficient written medical documentation and (2) no root canal was performed per Dr. Gilmer's office on November 14, 2007. See id. at 6.

confirmed the termination. See id. On November 29, 2007, after the expiration of the company's deadline for Dantes to submit documentation, Dantes alleges that she sent a two-page fax, inclusive of the coversheet, to SWEPCO.[3] See Record Document 49-7. The document allegedly contained either a Certificate of Disability / Attending Physician Statement from Dr. Kamm or a Return to Work Certificate signed by Dr. Kamm November 27, 2007, providing documentation. See id. Neither the Return to Work Certificate nor the Certificate of Disability provided that Dantes had been diagnosed with active tuberculosis ("TB"), nor did either document indicate that she had a positive TB skin prick.[4] See id. The document simply provided that Dantes was first treated on November 27, 2007 and "cannot carry-on conversation." See id. Dantes never provided any documentation to Defendants indicating that she had active TB or even that she had tested positive for TB on a preliminary skin test at any time. See Record Document 49-5 at 7. In fact, there is no evidence in the record which establishes she was ever diagnosed with active TB.

On July 14, 2008, Dantes filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging she had been discriminated against based on "being regarded as having a disability." Record Document 49-4 at 2. On December 17, 2014, the EEOC issued a Notice of Right to Sue in connection with the complaint filed by Dantes. See Record Document 1-1. On March 9, 2015, Dantes filed the instant lawsuit alleging she was discharged by the Defendants because she was disabled due to her TB diagnosis. See Record Document 1 at 2-3. Defendants filed the instant Motion for

---

[3] Defendants have no record of either of these documents ever being provided to them. See Record Document 49-5 at 7.

[4] In a separate document, it is provided that on November 30, 2007, after her termination from employment, Dantes received a positive test on a TB skin prick test. See Record Document 49-6. A positive skin prick does not equate to a diagnosis of active tuberculosis; rather, it indicates that additional testing is necessary. See id.

Summary Judgment on April 2, 2018, arguing summary judgment is proper regarding her ADA claims because there is no genuine issues of material fact showing Dantes was (1) not disabled, (2) not qualified for the position in which she was employed, and (3) not discriminated against because of her alleged disability. See Record Document 49-1 at 13-28. Defendants also seek dismissal of Dantes' Title VII claims because she failed to exhaust her administrative remedies. See id. at 29-30. As previously mentioned, Dantes did not oppose Defendants' Motion.

## LAW AND ANALYSIS

### I.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." F.R.C.P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... grant summary judgment." F.R.C.P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings ... [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of

going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 324, 106 S.Ct. at 2553; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075.

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). However, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should "review[ ] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 1776 (2007); see also Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."). Further, the court should not, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little, 37 F.3d at 1075.

## II. DISABILITY DISCRIMINATION CLAIM

To meet her initial burden of disability discrimination under the ADA, Dantes must show that: (1) she has a disability, (2) she is a qualified individual for the job in question, and (3) an adverse employment decision was made because of her disability. See Talk

v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999). The plaintiff bears the burden of proving each of these elements. See Moody v. M.W. Kellogg Co., 176 F.3d 479 (5th Cir. 1999), citing Rizzo v. Children's World Learning Ctrs., 84 F.3d 758, 763 (5th Cir. 1996).

**A.  Disability**

Whether someone is disabled is a "threshold issue" of coverage under the ADA. See Lomastro v. Caddo Par. Sheriff, 2006 WL 1805875, *2 (W.D. La. 2006). A disability under the ADA is defined as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual (actual standard); (2) record of such impairment; or (3) being regarded as having such an impairment." Cargo v. Kansas City S. Ry. Co., 2011 WL 3879523, *3 (W.D. La. 2011). Although not discussed in any detail by Dantes in her Complaint, she alleges that at the time of her discharge, she "had a condition that substantially limited her in one or more major life activities (actual standard), [] had a record of such a condition, and the [Defendants] regarded her as having such a condition." Record Document 1 at 3. Accordingly, the Court will analyze all three standards of disability.

    **1.  Actual Standard**

A plaintiff satisfies the actual standard by showing she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "Merely having an impairment, however, does not make one disabled for purposes of the ADA. Plaintiff[] also need[s] to demonstrate that the impairment substantially limits a major life activity." E.E.O.C. v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 614 (5th Cir. 2009) (citations omitted). The term "substantially limits" means:

      (i)      Unable to perform a major life activity that the average person in the general population can perform; or

      (ii)     Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

The EEOC defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). In order to be substantially limited in the major life activity of "working," a plaintiff must allege that she is "unable to work in a broad class of jobs or a broad range of jobs in various classes." Savoy v. Borden's Milk Products, LP, 2006 WL 2914647, *2 (W.D. La. 2006). An employee's "inability to perform one aspect of the job while retaining the ability to perform the work in general does not amount to a substantial limitation of the activity of working." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995). Dantes presents no evidence that her "disability" prevents her from performing an entire class of jobs, or even a broad range of jobs.

In the instant matter, Dantes' Complaint asserts, without medical support or proof, she was disabled due to her TB diagnosis. See Record Document 1. However, Dantes was never diagnosed with active TB. Rather, on November 30, 2007, after her termination from employment and thirty (30) days after first reporting absent from work due to alleged health-issues, Dantes only received a positive test on a TB skin prick test. See Record Document 49-6. A positive skin prick does not equate to a diagnosis of active TB; rather, it simply indicates that additional testing is necessary. See id. Importantly, there was never any diagnosis produced to Defendants or in any discovery subsequent to that date.

See Record Document 49-5 at 7. Even to this day, some ten plus years after her termination from Defendants, Dantes has not provided any medical documentation to establish that she was diagnosed with active TB. See id.

Dantes' case is very similar to that of Lester v. Trans World Airlines, Inc., 1997 WL 417814 (N.D. Ill. 1997). In Lester, the plaintiff had a track record of absenteeism. See id. at *1. She was then diagnosed with active TB, causing her to be hospitalized and miss additional work. See id. at *2. Lester initially took a medical leave of absence when she was diagnosed with the active condition. See id. Upon being cleared for work by her physician with no restrictions, Lester returned to her employment with the company. See id. However, her excessive absenteeism also continued – which she blamed on the side effects of the medication she was taking for her TB. See id. Following warnings from supervisors, the company terminated Lester due to excessive absenteeism. See id. at *3. Lester filed suit under the ADA contending that her TB infection was a substantially limiting impairment that qualified her for protections under the ADA. See id. at *1.

The Lester court reviewed the EEOC Compliance Manual regarding TB, which provides that TB is only viewed as a disability "when it is: 1) active; 2) has a high likelihood of recurrence in substantially limiting forms; or 3) requires substantial limitation of major life activity to prevent or lessen the severity of recurrence." Id. at *7, citing EEOC Compliance Manual § 902.4(d). The Lester court went on to state that the plaintiff "presented no evidence that her tuberculosis is still active, that there is a high likelihood of it recurring in a substantially limiting form, or that a substantial limitation on her major life activities is required to prevent or lessen the severity of its recurrence." Id. Accordingly,

the Lester court held that "the EEOC guidelines [ ] confirm that her condition does not constitute a disability." Id.

Here, Dantes has similarly provided no evidence to support her claim that her potential diagnosis of TB constitutes a disability. Unlike Lester, where the plaintiff was actually diagnosed and treated for active TB, including several weeks in the hospital and drug treatment for multiple months, Dantes presented no evidence that she ever had active TB, and in fact, during this litigation it has been determined that following her positive skin test she failed to take her medication as prescribed by her physician, and she was never found to have active TB. See Record Document 49-6. Further, Dantes has provided no evidence that her condition had a "high likelihood of reoccurring" or that she was required to substantially limit major life activities in order to prevent or less the severity of the reoccurrence. Additionally, and significantly, Dantes never provided any documentation to Defendants indicating that she had active TB or even that she had tested positive for the TB on a preliminary skin test at any time. See Record Document 49-5 at 7. Accordingly, the Court finds insufficient evidence to conclude Dantes' condition constitutes a disability.

### 2. "Regarded as" Disabled

A plaintiff satisfies the regarded-as standard by establishing she has been "subjected to a prohibited action [*e.g.*, termination] because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." Williams v. Tarrant Cty. Coll. Dist., 2018 WL 480487, *4 (5th Cir. 2018), quoting 29 C.F.R. § 1630.2(l)(1). Under the amended regarded-as standard, a plaintiff "needs to plead and prove only that she was regarded

as having a physical or mental impairment [and not] that the actual or perceived impairment substantially limited one or more major life activities." Id., quoting Adair v. City of Muskogee, 823 F.3d 1297, 1306 (10th Cir. 2016) (quotation and citation omitted); see also Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 230 (5th Cir. 2015). Therefore, to be "regarded as impaired," Dantes "need only show that her employer perceived her as having an impairment and that it discriminated against her on that basis." Burton, 798 F.3d at 230 (cleaned up).

Dantes has submitted no evidence pertaining to her ADA claim. Consequently, there is no evidence in the record to support her claim that Defendants perceived her as having TB, or potentially having TB, and that Defendants discriminated against her on that basis. Without such evidence, Dantes cannot prove she was regarded as having a disability under the ADA.

### 3. "Record of" Disability

A plaintiff has a record of a disability only after having had (or when being perceived as having had) a "disability" as the ADA uses that term. See Jordan v. Kellwood Co., 189 F.3d 469 (5th Cir. 1999), citing Hamilton v. Southwestern Bell Telephone Co., 136 F.3d 1047, 1051 (5th Cir.1998); 29 C.F.R. § 1630.2(k). As discussed *supra*, the Court has determined that Dantes did not have a "disability" as described by the ADA, nor was she perceived as having a "disability;" therefore, Dantes has failed to provide summary judgment evidence that she has a record of such an impairment that substantially limits a major life role. Accordingly, Dantes is unable to prove that she qualified as "disabled" under the ADA.

**B.    Non-Discriminatory Cause**

Furthermore, even if Dantes were disabled, the ADA requires that Defendants' adverse employment action be taken because of her disability. See Talk, 165 F.3d at 1024. Dantes was not terminated because of her disability but rather because of her unexcused absences.

On November 1, 2007, Dantes left work early due to an alleged health related issue. See Record Document 49-5 at 4. From the following day until her termination, Dantes stayed off work for alleged health-related reasons, although she failed to provide Defendants with necessary and requested information to substantiate her alleged health issue. See Record Document 49-3 at 3. AEP's Sick Pay Policy specifically requires written documentation from a health care provider certifying the reason for the absence, expected date of return, and written proof of continuing inability to work. See id. The Policy further requires that "you must notify your supervisor each day of your absence, unless other arrangements have been made." Record Document 49-5 at 36. The Sick Pay Policy clearly provides that benefits under the Policy terminate when "you fail to submit, when requested, sufficient written objective medical information relating to your illness or injury which supports a functional impairment preventing you from performing your occupation or a reasonable employment option." Id. at 40. Further, the AEP Recovery Center sent correspondence to Dantes enclosing a blank Certificate of Disability / Attending Physician Statement advising that the form "must be completed and returned to the Recovery Center no later than [November 28, 2007]." Id. at 46.

On November 14, 2007, Defendants received multiple doctors' slips providing that Dantes was "under the care of" a doctor or to "please excuse her from work." See Record

Document 49-5 at 5-6. However, none of the slips indicated any medical condition or any disabling medical condition. See id. Also on November 14, 2007, Defendants received a Certificate of Disability / Attending Physician Statement from Dr. Cassiere providing that Dantes had been treated for a "UTI" from November 2, 2007 through November 9, 2007, with a release to full duty on November 12, 2007. See id. at 5. Later, on November 20, 2007, Defendants received another Certificate of Disability / Attending Physician Statement from Dr. Cassiere providing that Dantes had been treated for a "UTI / Dyspnea with speaking" from November 2, 2007 through November 9, 2007, with a release to full duty on November 12, 2007, which are the same dates previously set forth in Dr. Cassiere's November 12, 2007 Certificate. See id. at 6. In other words, Dantes should have returned to work no later than November 13, 2007, but failed to do so.

After reviewing the documents that were received regarding Dantes, the Defendants determined that there was medical documentation substantiating her absence from November 1-11, 2007, and she received sick pay benefits for those days. See Record Document 49-5 at 7. However, Dantes received a release to return to work at full-duty effective November 12, 2007, but failed to return to work until she was terminated, and there was no objective medical documentation to support her continued absences. See id. Accordingly, Dantes' employment was terminated for her multiple unexcused absences in accordance with the Defendants' policy and procedures. See id. The termination was not due to any discrimination based on Dantes' alleged disability.

Since Dantes cannot prove either elements one or three of her *prima facie* case of discrimination under the ADA, the Court need not analyze whether she is a qualified individual for the job in question. See Moody v. M.W. Kellogg Co., 176 F.3d 479.

Accordingly, Defendants' Motion for Summary Judgment pertaining to Dantes' ADA claim is **GRANTED**.

### III. TITLE VII CLAIMS

Title VII provides that an employer may not "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2012). However, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Thomas v. Tex. Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000) (citations omitted) (finding that the plaintiff failed to exhaust her administrative remedies with regard to her race claim because she only alleged gender discrimination in her charge of discrimination). Courts have consistently required that claimant present claims and exhaust administrative remedies, which is as easy as checking a designated box(es) on the EEOC charge form. See Randel v. U.S. Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998) (holding that a plaintiff could not bring a race discrimination claim because his charge of discrimination was confined to retaliation and disability discrimination); Price v. Harrah's Md. Heights Operating Co., 117 F.Supp.2d 919, 921-22 (E.D. Mo. 2000) (granting summary judgment on failure to exhaust administrative remedies grounds for employer because plaintiff did not check the box for retaliation and did not specifically allege retaliation in the text of the charge); McCray v. DPC Indus., Inc., 942 F.Supp. 288, 294 (E.D. Tex. 1996) (informing that when asserting a claim for discrimination under Title VII, it is necessary for the appropriate box be checked in the EEOC claim). By simply

checking the box corresponding to the alleged basis for unlawful employment action, a plaintiff can raise and exercise her/his administrative remedies prior to a Title VII lawsuit. In determining whether an allegation in a complaint falls within the scope of an EEOC charge, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006); see also Turner v. St. Luke's Episcopal Health Sys., 2008 WL 706709, *7 (S.D. Tex. 2008).

Further, "a discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Turner at *7. For an alleged discriminatory act to fall within the scope of an EEOC charge, a factual relationship must exist between that act and the acts described in the charge. See id.

Here, Dantes has failed to exhaust her administrative remedies with regard to any Title VII claim as no Title VII violation was alleged in her EEOC charge, though it is provided as a basis for jurisdiction in paragraph 1 of her Complaint. See Randel, 157 F.3d at 395. Accordingly, any Title VII claim must be denied due to Dantes' failure to exhaust administrative remedies. Therefore, Defendants' Motion for Summary Judgment dismissing Dantes' Title VII claim is **GRANTED**.

## CONCLUSION

The Court finds insufficient evidence to conclude that a genuine issue of fact exists as to Dantes' alleged disability with tuberculosis, nor that a genuine issue of fact exists as to the cause of her termination. Thus, Dantes is not entitled to relief under the ADA

based upon her claim of disability discrimination. Additionally, Dantes has failed to exhaust her administrative remedies with regard to any Title VII claim as no Title VII violation was alleged in her EEOC charge; therefore, any Title VII claim must be denied. Accordingly, Defendants' unopposed "Motion for Summary Judgment" (Record Document 49) is **GRANTED**.

    **THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 1st day of May, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT